# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| STATE OF MISSISSIPPI, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | Consolidated |
| v. | ) ) ) | Nos. 19-231L/19-258L/19-1968L/ 19-1812L/20-30L/21-820L (Filed: December 22, 2022) |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

John W. (Don) Barrett, Barrett Law Group, P.A., Lexington, Mississippi, with whom was Patrick W. Pendly, Pendley, Baudin & Coffin, L.L.P, Plaquemine, Louisiana, for Plaintiffs. Jonathon W. Cuneo, Cuneo Gilbert & Laduca, LLP, Washington, DC, Mark H. Dubester, Cuneo Gilbert & Laduca, LLP, Washington, DC, Jennifer E. Kelly, Cuneo Gilbert & Laduca, LLP, Washington, DC, David McMullan, Jr., Barrett Law Group, P.A., Lexington, Mississippi, Jerry Abdalla, Abdalla Law, PLC, Ridgeland, Mississippi, Robert J. Cynkar, McSweeney, Cynkar & Kachouroff, PLLC, Great Falls, Virginia, William F. Blair, Blair & Bondurant, P.A., Jackson, Mississippi, Richard Barrett, Law Office of Richard R. Barrett, PLLC, Oxford, Mississippi, and Larry D. Moffett, Law Office of Larry D. Moffett, PLLC, Oxford, Mississippi, Of Counsel.

Davené D. Walker, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, with whom were Brent Allen, U.S. Department of Justice, Environmental Resources Division, Washington, DC, Lucas Lallinger, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, and Todd Kim, Assistant Attorney General, Environment & Natural Resources Division, for Defendant.

## **OPINION AND ORDER**

**KAPLAN, Chief Judge.**

On October 11, 2022, the United States served 543 requests for admissions ("RFAs"), two interrogatories, and one request for production on the Plaintiffs in this case. See Pls.' Mot. for Protective Order, Ex. 1, ECF No. 152-1. On November 21, 2022, the Plaintiffs moved for a protective order seeking to avoid responding to any of those RFAs. See Pls.' Mot. for Protective

1

Order at 1, ECF No. 152. For the reasons explained below, the Court **DENIES** the Plaintiffs' motion.

The Plaintiffs' primary objection to the RFAs is a generic one—that they are "unduly burdensome, cumulative, and unrelated to any purpose associated with the actual stream-lining of the issues in the case." See id. They argue that the number of requests alone indicates that they are "excessive and unjustifiably burdensome." Id. at 3. The Plaintiffs also mention several categories of requests that they argue are improper. These include requests concerning the United States Army Corps of Engineers' subjective intent with respect to its operation and management of the Old River Control Complex ("ORCC"), what Plaintiffs characterize as "materially misleading" requests regarding flooding and its impacts, and requests already covered during depositions. See id. at 3–9. Because the RFAs are excessive and unrelated to the core issues of the case, the Plaintiffs argue, the Court should grant a protective order barring the government from seeking responses to their RFAs in full. See id. at 3; see also Pl.'s Reply to Def.'s Resp. to Pls.' Mot. for Protective Order at 4, ECF No. 158.

If a party believes that RFAs violate this Court's discovery rules, it may move for a protective order. See Rule 26(c)(1) of the Rules of the Court of Federal Claims ("RCFC"). Parties moving for a protective order in the discovery context must demonstrate that good cause exists to provide the requested relief. See RCFC 26(c)(1).[1] "In order to establish 'good cause,' a party must show 'that the discovery request is considered likely to oppress an adversary or might

---

[1] Moving parties must also certify that they attempted to confer in good faith with nonmoving parties to attempt to resolve the dispute without the Court's intervention. See RCFC 26(c)(1); see also Lakeland Partners, LLC v. United States, 88 Fed. Cl. 124, 136 (2009). Plaintiffs noted in their motion that they attempted to confer with the government to resolve this dispute and have therefore satisfied this requirement. See Pls.' Mot. for Protective Order at 2 n.3.

otherwise impose an undue burden.'" Lakeland Partners, LLC v. United States, 88 Fed. Cl. 124, 133 (2009) (quoting Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999)). Good cause requires a specific demonstration that "disclosure will cause a clearly defined and serious injury." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995); see also Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004) (requiring the same showing).

In determining whether RFAs are unduly burdensome, courts generally balance the responding party's burden against the needs and complexity of the case and the likely benefit to the requesting party. See RCFC 26(b)(2). Additionally, in contrast to other discovery disputes, courts consider the particular benefits of RFAs in (ideally, at least) "expedit[ing] trial by removing essentially undisputed issues, thereby avoiding time, trouble and expense which otherwise would be required to prove issues." Burns v. Phillips, 50 F.R.D. 187, 188 (D. Ga. 1970); see also JZ Buckingham Investments LLC v. United States, 77 Fed. Cl. 37, 44 (2007); Fed. R. Civ. P. 36 Advisory Committee's Note (1970 Amendment) (RFAs serve "two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.").[2]

Unlike interrogatories and other discovery requests, RCFC 36 does not place a precise numerical limit on RFAs. Compare RCFC 33(a)(1) (requiring parties to serve no more than 25 written interrogatories to each party) with RCFC 36(a)(1) ("A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of RCFC 26(b)(1)."). While a high number of RFAs alone may indicate that the requests impose an undue burden on

---

[2] Fed. R. Civ. P. 36 is identical to RCFC 36. See RCFC 36 Rules Committee Notes (2002 revision).

the responding party meriting a wholesale protective order, that number must also be considered in light of the particular complexities of the case at hand, the number of parties involved, the costs and benefits to the particular parties in the case, and other relevant information. See, e.g., Vermeer Mfg. Co. v. Toro Co., 2020 WL 8257205, at *2 (S.D. Iowa Apr. 20, 2020) ("There is thus no magic number at which requests for admissions are presumptively burdensome; whether the requests for admission are proportional to the case is an entirely case-specific inquiry."); Asarco LLC v. Union Pac. R.R. Co., 2016 WL 1755241, at *12 (D. Idaho May 2, 2016) ("[T]he Court must consider [RFAs] in the context of the case itself. Some cases are more complicated than others, and certainly this case has many moving parts with significant financial stakes involved."). Additionally, courts are not necessarily in the best position to grant wholesale protective orders and generally prefer objections to specific requests. See U.S. Bank Nat'l Ass'n v. SFR Investments Pool 1, LLC, 2018 WL 2271222, at *1 (D. Nev. Feb. 5, 2018) ("'[C]ourts do not readily grant protective orders against an entire set of discovery requests on the grounds that the number of requests is excessive,' and will instead generally review specific objections to individual requests.") (quoting Jones v. Skolnik, 2014 WL 2625000, at *2 (D. Nev. June 12, 2014) (rejecting blanket protective order and instead considering objections to specific requests)).

Here, rather than objecting to particular requests on specific grounds and making an effort to respond to non-objectionable requests, Plaintiffs moved for a protective order in full. As discussed above, courts are typically not amenable to wholesale protective orders and prefer to consider specific objections. See Jones, 2014 WL at *2. Plaintiffs here have raised a broad objection and failed to make a sufficient showing that such broad relief is necessary.

The number of requests, while high, is not facially excessive. This case, which began nearly four years ago, involves well over one hundred plaintiffs, among whom are the owners of some 36 bellwether properties across nine counties. They seek hundreds of millions of dollars in damages. The resolution of their claims will depend on a number of highly technical and fact-specific determinations concerning the design of the ORCC and its impacts over its decades of use. See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., 2007 WL 3171768, at *3 (D. Kan. Oct. 29, 2007) ("[T]he fact that the Defendants have served 1,351 requests in total is not surprising given the number of Defendants involved in this litigation, the allegations of conspiracy alleged and the fact that Heartland is seeking damages of $121,548,021 jointly and severally against these defendants."). These RFAs may assist the parties in narrowing the issues for trial, streamlining the case, and aiding the trier of fact in narrowing in on the areas actually in dispute. And Plaintiffs make no effort to suggest a number or category of RFAs that would be reasonable. Without specific, limited objections to particular RFAs or any suggestions as to how to limit the RFAs in this case short of a wholesale protective order, the Court is not inclined to require the parties to restart the process at stage one, with more objections and motions likely to follow. See Layne Christensen Co. v. Purolite Co., 2011 WL 381611, at *6 (D. Kan. Jan. 25, 2011) (Plaintiffs' objection to the number of RFAs "provides little help as to what should be a reasonable limit. . . . The rules themselves do not set a specific limit. The party claiming undue burden carries a preliminary burden to show it.").

Plaintiffs do single out certain categories of RFAs in their motion, although they refer to these RFAs merely as "examples." See Pls.' Mot. for Protective Order at 4. For instance, Plaintiffs object to RFAs inquiring into the Army Corps' intentions in constructing and operating the ORCC. See id. at 4–5. Plaintiffs also object to certain RFAs which they say are outside their

knowledge. See id. at 4. But the Rules have a simple remedy in instances in which the responding party has no knowledge and cannot in good faith obtain the answers: state that they lack the knowledge. See RCFC 36(a)(4) ("The answering party may assert lack of knowledge or information . . . if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.").

The Court is similarly unmoved by Plaintiffs' objections that certain RFAs are worded in a misleading fashion. If Plaintiffs cannot in good faith admit a request, they may deny it or qualify their answer. See id. (permitting parties to qualify or admit in part answers if good faith requires doing so). If they believe an admission will be twisted to mean something it does not, they can press their argument at trial. The Court understands, for instance, that the case rests partly on the extent of flooding in particular years and is confident that it will not be misled by an admission that some flooding occurred in certain years. See Pls.' Mot. for Protective Order at 5–6 (arguing that admissions that flooding occurred or did not prevent Plaintiffs from farming their land obscure the issues in the case). The heart of this litigation will rest on the parties' dispute regarding the impacts of the ORCC and the extent of the flooding, and these admissions will, contrary to Plaintiffs' objections, help clarify those issues for trial rather than obscure them.

Additionally, Plaintiffs object to certain RFAs that seek answers to questions already asked and answered in depositions. See id. at 8–9. These concerns are also unpersuasive. The purpose of the RFAs is to permit the parties to avoid presenting evidence at trial on matters that have been admitted. These RFAs will enable precisely that.

The Court therefore **DENIES** Plaintiffs' request for a protective order with respect to the government's requests for admission, interrogatories, and request for production of documents. Plaintiffs shall respond to the discovery requests within thirty days of the date of this Order.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan

ELAINE D. KAPLAN

Chief Judge